902 F.2d 1564
 57 Fair Empl.Prac.Cas. 1896
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Patricia A. COLBERT, Plaintiff-Appellant,
v.
STATE OF MARYLAND DEPARTMENT OF CORRECTIONS MARYLAND
CORRECTIONAL INSTITUTE, Defendant-Appellee.
 No. 89-2962.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 8, 1990.
Decided April 20, 1990.
As Amended May 9, 1990.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Herbert F. Murray, Senior District Judge. (No. HM 84-4287).
 
 
 2
 Edward Joseph Gutman, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md., for appellant.
 
 
 3
 Stuart Milton Nathan, Assistant Attorney General, Department of Public Safety and Correctional Services, Baltimore, Md. (argued), for appellee; J. Joseph Curran, Jr., Attorney General, Baltimore, Md., on brief.
 
 
 4
 D.Md.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WIDENER and SPROUSE, Circuit Judges, and WALTER E. HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 
 WALTER E. HOFFMAN, Senior District Judge:
 
 7
 In this Title VII action, the appellant seeks damages from her employer, the Maryland Department of Corrections, for alleged sexual discrimination in failure to promote her on four different occasions. The district court held that appellant's employer did not exhibit an intention to discriminate, which is required in a discriminatory treatment case. The employer also advanced legitimate nondiscriminatory reasons for its failure to promote appellant, and those reasons were not pretextual. Because these holdings are not clearly erroneous, we affirm.
 
 I. FACTS
 
 8
 Plaintiff Patricia A. Colbert was employed by defendant Maryland Department of Corrections as a correctional officer, commencing in July 1975. She was assigned to Maryland House of Corrections when she began maternity leave on May 12, 1981. When she returned to work on January 27, 1982, she was assigned to the Maryland Correctional Institute (MCI) at Jessup, Maryland.
 
 
 9
 On her first day of duty at MCI, Colbert wore a skirt as part of her uniform, consistent with her practice for six years at the House of Corrections. She immediately was informed that the proper uniform for MCI required trousers, rather than a skirt. She sought permission from each of her supervisors in the chain of command to continue wearing a skirt because of her religious beliefs about the impropriety of women wearing trousers. Permission was denied by all, including Warden Valenti who threatened her with suspension or termination if she failed to wear the prescribed uniform.
 
 
 10
 Colbert was suspended for the remainder of that first day of duty. After discussing the matter with her husband, Colbert decided to comply with the warden's order. She returned to work the following day in the proper uniform, and the issue was never raised again.
 
 
 11
 In April 1982, Warden Valenti sought to fill a vacancy for a Correctional Officer IV (C.O. IV), which was one step above the position held by Colbert. On the eligibility list then current, Colbert was the only candidate. The warden requested a new promotional list with additional candidates, pursuant to Maryland Employees Personnel Regulation 06.01.01.31. The regulation provides for an expanded list when fewer than five names are available for certification and no satisfactory selection can be made.
 
 
 12
 Colbert's name was seventh on the new list, which was based on a later examination. Because the warden was required to select from the first five candidates, Colbert was not eligible for selection. The warden's selection of two candidates for C.O. IV positions in June 1982 elevated Colbert to the fifth slot and made her eligible for subsequent openings.
 
 
 13
 In August 1982, the warden selected another candidate for a third C.O. IV vacancy. Although Colbert was within the eligible range, the successful candidate was at the top of the list, having achieved the highest written test score.
 
 
 14
 In November 1982, the warden again selected the first candidate on the list of eligibles for a fourth C.O. IV vacancy. The successful candidate again had a higher written test score than Colbert. In July 1982, however, that candidate had received a three-day suspension for discharging a weapon in a building. In September and October 1982, he had received warnings and counseling for tardiness.
 
 
 15
 After the initial list when only Colbert's name was rejected, the next four successful candidates for C.O. IV positions were men. At the time, all 107 C.O. IV's at male correctional institutions were men. No woman correctional officer ever had attained that rank. In April 1983, the warden selected a woman other than Colbert to be a Correctional Officer IV.
 
 
 16
 The district court held that Warden Valenti had two reasons for not promoting Colbert for the first open position: he expected additional openings and wanted a larger pool of candidates from which to choose, and his first and only contact with Colbert had been a negative one (the uniform incident). The warden based his selection for promotion in each instance on the disciplinary record, written examination scores, past annual efficiency ratings, interview scores, personnel files, length of service, and supervisory recommendations of each candidate.
 
 II. ANALYSIS
 
 17
 Colbert proceeded in this action on a disparate treatment theory of recovery. The trial court held that Colbert made out a prima facie case of disparate treatment. The seminal case of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), serves as the blueprint for the trial court's determination. Colbert showed that (i) she was a member of a protected group; (ii) she applied and was qualified for a job for which the employer was seeking applicants; (iii) despite her qualifications, she was rejected; and (iv) after her rejection, the position remained open and the employer continued to seek applications from persons of similar qualifications, or filled the position with a male employee. Id. at 802.
 
 
 18
 In doing so, Colbert created a rebuttable presumption that the Maryland Department of Corrections unlawfully discriminated against her. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). The employer, in response, produced legitimate, nondiscriminatory reasons to explain why Colbert was rejected for promotion or someone else was preferred. Id.
 
 
 19
 Colbert then was given the opportunity to demonstrate that the proffered reasons were not true reasons for the Department of Correction's failure to promote her. Id. at 256. To establish that she was the victim of intentional discrimination, she could have persuaded the court that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation was unworthy of credence. Id. (citing McDonnell Douglas, 411 U.S. at 804-05).
 
 
 20
 The ultimate issue of fact is whether the failure to promote Colbert was discriminatory within the meaning of Title VII. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983). "The 'factual inquiry' in a Title VII case is '[whether] the defendant intentionally discriminated against the plaintiff.' " Id. (quoting Burdine, 450 U.S. at 253). The relevant consideration is whether the employer applied the same promotional criteria to applicants of both sexes, McDonnell Douglas, 411 U.S. at 804, and did not treat some applicants less favorably than others because of their sex. Aikens, 460 U.S. at 715. The record does not support Colbert's contention that the Department used discipline as a disqualifier and applied it inconsistently. The trial court concluded that the Department's proffered reasons were not pretextual and that it did not intentionally discriminate against Colbert on the basis of her sex. A finding of intentional discrimination is a factual finding. Id. Colbert concedes that findings of fact shall not be set aside unless clearly erroneous. Anderson v. City of Bessemer City, 470 U.S. 564, 566 (1985). Despite Colbert's urgings to the contrary, this court "on the entire evidence" is not "left with the definite and firm conviction that a mistake has been committed." Id. at 573.
 
 
 21
 The district court very clearly used the correct standards of law and, in its thorough opinion, painstakingly examined each promotional decision challenged by Colbert. Only the fourth promotion, involving the previously disciplined candidate, gave the district court any problem. It concluded, however, that a creditable case could be made for promoting either the successful candidate or Colbert. Without direct evidence of gender-based discrimination, it concluded that it could not second-guess a promotional decision for which there was a substantial basis.
 
 III. CONCLUSION
 
 22
 As the burden of persuasion remains with the plaintiff-appellant throughout, Burdine, 450 U.S. at 256, the district court's conclusion was not clearly erroneous. For the foregoing reasons, the district court's judgment is affirmed.
 
 
 23
 AFFIRMED.